**HUESTON HENNIGAN LLP**
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Rajan S. Trehan, State Bar No. 302242
rtrehan@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4543
Facsimile: (888) 775-0898

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

IN THE MATTER OF A DEPOSITION SUBPOENA SERVED IN:

UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,

Plaintiffs,

vs.

SUNO, INC., and JOHN DOES 1-10,

Defendant.

Case No.: 5:26-mc-80303

[RELATED TO CASE NO. 1:24-CV-11611-FDS PENDING IN THE DISTRICT OF MASSACHUSETTS]

**PLAINTIFFS' RESPONSE, AS THE DESIGNATING PARTIES, TO SUNO, INC.'S MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL (DOCKET NO. 11)**

Plaintiffs UMG Recordings, Inc. and Capitol Records, LLC (together, "Universal") and Sony Music Entertainment ("Sony," and with Universal, "Plaintiffs"), the plaintiffs in the underlying action and the Designating Parties of the materials at issue, submit this statement under Civil Local Rule 79-5(f)(3) and Paragraph 22 of the Amended Confidentiality Stipulation and Protective Order entered in the underlying action (the "Protective Order").[1] Plaintiffs are not parties to this miscellaneous proceeding. They submit this statement because the party that designated the materials as confidential bears the burden of justifying sealing. Plaintiffs request narrowly tailored relief. Suno's Administrative Motion identifies certain text in its Opposition as requiring sealing and asks the Court to seal Exhibits 2 through 8 to the Campbell Declaration in their entirety. Plaintiffs have reviewed each designation and ask the Court to keep sealed only information whose disclosure would cause specific competitive harm, in five categories: (1) the status and substance of Plaintiffs' ongoing license negotiations with non-party Apple Inc. ("Apple") and other digital service providers ("DSPs"), the positions taken in those negotiations, and the terms of Plaintiffs' existing agreements; (2) the specific concessions and trade-offs Plaintiffs have made in DSP negotiations; (3) Plaintiffs' AI licensing counterparties and product plans; (4) Plaintiffs' internal market-share, financial, and analytics information; and (5) information concerning streaming fraud involving AI-generated content. Plaintiffs do *not* ask the Court to seal the remaining highlighted passages of the Opposition.[2]

As to the exhibits, Plaintiffs ask the Court to (1) maintain under seal, in their entirety, Exhibits 4 through 8, which are excerpts of the deposition testimony of Plaintiffs' executives; and (2) place on the public docket redacted versions of Exhibits 2 and 3, which are excerpts of Plaintiffs' interrogatory responses. Plaintiffs submit herewith redacted versions of Exhibits 2 and 3, which

---

[1] The Protective Order is attached as Exhibit C to the Declaration of Rajan S. Trehan ("Trehan Decl.") in support of sealing the subject materials. *See also UMG Recordings, Inc. v. Suno, Inc.*, Dkt. No. 180, No. 24 Civ. 11611 (FDS) (D. Mass).

[2] In addition to the above, Plaintiffs have applied targeted redactions over specific information derived from material Suno designated Highly Confidential pursuant to the protective order in the underlying litigation. *See* Declaration of Rajan S. Trehan ("Trehan Decl.") Ex. A at 28; Ex. B at 29-30. Plaintiffs have applied these targeted redactions premised on Suno's confidentiality designations. This redacted material is not cited in Suno's Opposition or otherwise relevant to the dispute as to whether Apple must suit for a deposition in response to Suno's subpoena.

redact only discrete passages of Plaintiffs' interrogatory responses that disclose confidential, commercially sensitive business information and/or that Suno does not cite and that have no bearing on its Motion. Trehan Decl., Exs. A, B.

## BACKGROUND

Plaintiffs sued Suno for copyright infringement in the District of Massachusetts. *See UMG Recordings, Inc. v. Suno, Inc.*, No. 24 Civ. 11611 (FDS) (D. Mass.) (the "Massachusetts Litigation"). The Court entered the operative Protective Order in the Massachusetts Litigation on December 24, 2025. *See* Trehan Dec., Ex. C. It permits designation of material as "Highly Confidential – Attorneys' Eyes Only" and requires a party that seeks to file another party's Protected Discovery Material to confer with the Designating Party and to move to seal. *Id.* at ¶¶ 1, 5. The Designating Party must then file a "statement of reasons that the confidential material should be sealed." *Id.* at ¶ 22.

On October 27, 2026, Suno filed its Opposition to Non-Party Apple Inc.'s Motion to Quash Deposition Subpoena or, in the Alternative, Motion for Protective Order. Suno's Opposition quotes and characterizes Plaintiffs' designated material and interrogatory responses and attaches excerpts of those materials as Exhibits 2 through 8. Suno filed its Administrative Motion the same day.

Before filing, the parties conferred regarding Suno's intent to file Plaintiffs' interrogatory responses in connection with its Opposition, and Plaintiffs requested that the materials be filed under seal and stated that they did not oppose Suno's Administrative Motion. Suno then moved to file the exhibits and its unredacted Opposition under seal. Plaintiffs have since reviewed the exhibits under the standards that govern sealing in this Court and now propose the targeted redactions to the interrogatory responses (Exhibits 2 and 3) described below in place of sealing those exhibits in full, and request that the deposition excerpts (Exhibits 4 through 8) remain sealed in their entirety.

## LEGAL STANDARD

Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). That right "is not absolute," and courts may deny access to records that could serve "as sources of business information that might harm a litigant's competitive standing." *Id.* at 598. In the Ninth Circuit, a party seeking to seal records attached to a motion that is "more than tangentially related to the merits

of a case" must show "compelling reasons." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098, 1101 (9th Cir. 2016); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). For records attached to motions that are not more than tangentially related to the merits, the "good cause" standard of Federal Rule of Civil Procedure 26(c) applies. *Ctr. for Auto Safety*, 809 F.3d at 1097–98; *Kamakana*, 447 F.3d at 1179–80; *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). Good cause requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips*, 307 F.3d at 1210–11; *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

## ARGUMENT

### I. THE GOOD CAUSE STANDARD APPLIES

Apple's motion asks whether a non-party must sit for a Rule 45 deposition. It is a discovery motion that will not resolve any claim or defense in the Massachusetts Litigation, and it is not "more than tangentially related to the merits." *Ctr. for Auto Safety*, 809 F.3d at 1101. Courts in this District therefore apply the good cause standard to materials filed with motions to quash and other discovery motions. *See Kamakana*, 447 F.3d at 1179–80 (good cause governs sealed discovery materials attached to non-dispositive motions); *In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012). The public's interest is especially limited here because the materials are Plaintiffs' own confidential discovery responses and testimony from another case, which are implicated only because Suno attached them to argue relevance. *See Phillips*, 307 F.3d at 1213 ("[W]hen a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted[.]"); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[P]retrial depositions and interrogatories are not public components of a civil trial.").

In any event, the targeted information Plaintiffs ask the Court to protect satisfy the compelling reasons standard as well. Confidential license terms, negotiating positions, and non-public financial information are the paradigm of "business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598; *see also In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (compelling reasons to seal "pricing terms, royalty rates, and guaranteed minimum payment terms" of a license agreement); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1225–26 (Fed. Cir.

2013) (applying Ninth Circuit law, holding that district court abused its discretion in refusing to seal detailed financial information whose disclosure could harm the parties' negotiating positions).

## II. SPECIFIC HARM WOULD RESULT FROM DISCLOSURE OF EACH CATEGORY OF INFORMATION

The table below identifies, for each passage of the Opposition and accompanying exhibits that Plaintiffs ask the Court to keep sealed, the source material and the category of information it discloses.

| Opposition (page:line) | Source[3] | Category |
|---|---|---|
| 1:17–21 | Nash Deposition (Ex. 4); Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 1 (Apple/DSP negotiations & agreement terms) |
| 4:4-8 | Universal's Interrogatory Responses (Ex. 2) | Proposed Unsealed |
| 4:12–18 | Gallien Deposition (Ex. 6); Kooker Deposition (Ex. 8); Nash Deposition (Ex. 4) | 4 (internal market-share/financial data) |
| 4 n.2 | Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 1 (Apple/DSP negotiations & agreement terms) |
| 5:22–23 | Nash Deposition (Ex. 4) | 1 (Apple/DSP negotiations & agreement terms) |
| 6:22–7:13, 7:25 | Nash Deposition (Ex. 4); Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 1 (Apple/DSP negotiations & agreement terms) |
| 7:15–16 | Kooker Deposition (Ex. 8) | 3 (AI licensing plans) |
| 8:24–27 | Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 1 (Apple/DSP negotiations & agreement terms) |
| 14:3–4 | Kooker Deposition (Ex. 8) | 3 (AI licensing plans) |
| 14:8–9 | Nash Deposition (Ex. 4); Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 1 (Apple/DSP negotiations & agreement terms) |
| 14:11–20 | Walker Deposition (Ex. 7); Nash Deposition (Ex. 4); Dworkin Deposition (Ex. 5); Universal's Interrogatory Responses (Ex. 2) | 2 (concessions & trade-offs) |
| 15:5–10 | Nash Deposition (Ex. 4); Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 1 (Apple/DSP negotiations & agreement terms) |
| 16:10 | Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 2 (concessions & trade-offs) |

[3] References to exhibits in the above table are to the Exhibits to the Declaration of Christopher B. Campbell in Support of Suno, Inc.'s Administrative Motion to Consider Whether Another Party's Material Should be Sealed. Dkt. 11-1.

| Opposition (page:line) | Source[3] | Category |
|---|---|---|
| 17:11-14 | Walker Deposition (Ex. 7); Kooker Deposition (Ex. 8); Nash Deposition (Ex. 4) | 5 (fraud) |
| 18:9-10, 19:15-17 | Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 1 (Apple/DSP negotiations & agreement terms) |
| 20:14–26 | Walker Deposition (Ex. 7); Dworkin Deposition (Ex. 5); Gallien Deposition (Ex. 6) | 1 (Apple/DSP negotiations & agreement terms) |
| 21:3-6 | Nash Deposition (Ex. 4); Dworkin Deposition (Ex. 5); Walker Deposition (Ex. 7) | 5 (fraud) |

### A. Category 1: Ongoing negotiations with Apple and other DSPs, the parties' positions, and the terms of existing agreements.

Category 1 covers testimony and interrogatory responses describing the status and substance of Plaintiffs' ongoing license negotiations with Apple, including the protections Plaintiffs have sought, the parties' respective positions on matters under negotiation, and Plaintiffs' expectations regarding the negotiations; the terms of Plaintiffs' existing agreements with Apple, the parties' performance under those agreements, and communications between Plaintiffs and Apple concerning them; and the terms of Plaintiffs' agreements with other DSPs, including the status and operation of provisions concerning AI-generated content and how DSPs report royalty-bearing plays to Plaintiffs. Declaration of Jonathan Dworkin ("Dworkin Decl.") ¶ 4; Declaration of Jeff Walker ("Walker Decl.") ¶ 4.

Disclosure would cause specific harm. The public would learn Plaintiffs' internal assessment of deal negotiations that have not concluded and of where Plaintiffs expect those negotiations to land, weakening Plaintiffs' bargaining position in ongoing and future deals. *Id.* Other DSPs, with which Plaintiffs negotiate on a recurring basis, would learn what Plaintiffs have sought from Apple and how Apple has responded, and could use that information to demand similar concessions or to resist Plaintiffs' proposals. *Id.* Disclosure of the terms of Plaintiffs' existing agreements would also breach Plaintiffs' confidentiality obligations to their licensees and reveal to other licensees and competitors the protections Plaintiffs have and have not been able to obtain. *Id.* Those agreements contain confidentiality provisions, Plaintiffs take steps to keep this information confidential, and Apple—a non-party—has told this Court that it treats its negotiating positions with Plaintiffs as confidential.

Dworkin Decl. ¶¶ 4, 9; Walker Decl. ¶¶ 4, 9; Opp. at 21:21–23. Courts routinely seal this kind of information. *See Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020) (observing that "license agreements, financial terms, details of confidential licensing negotiations, and business strategies" are sealable even under the compelling reasons standard) (internal quotation marks omitted). And the interests of non-parties to the Massachusetts Litigation whose confidential dealings are described—here, Apple and Plaintiffs' other DSP counterparties—weigh in favor of protection. *See Valtrus Innovations, Ltd. v. Google LLC*, 2026 WL 734528, at *10 (N.D. Cal. Mar. 16, 2026).

**B. Category 2: Concessions and trade-offs in DSP negotiations.**

Category 2 covers testimony and interrogatory responses describing the terms Plaintiffs have negotiated with DSPs in exchange for AI-related protections. That includes the nature and economic effect of the consideration exchanged, and Plaintiffs' internal assessments of the value and efficacy of particular contract terms. These specifics are among the most commercially sensitive information in Suno's filing because they reveal what Plaintiffs may be willing to give in order to obtain a term, not just what they ask for. Plaintiffs negotiate repeatedly with the same and similar counterparties. Their agreements renew on staggered cycles, so each concluded negotiation can serve as a reference point for the next. Dworkin Decl. ¶ 5; Walker Decl. ¶ 5. A DSP that learned what consideration Plaintiffs exchange for an AI-related term in another negotiation, and how Plaintiffs value that term internally, could derive Plaintiffs' strategy and tether its negotiation strategy to that prior exchange. *Id.* Moreover, Plaintiffs' internal assessments of how particular terms have performed would tell counterparties what Plaintiffs intend to seek in future renewals and how much those counterparties could discount what they offer. *Id.* The harm also reaches non-parties, because the terms at issue are provisions of agreements whose confidentiality the DSP counterparties have bargained for. *Id.*

Courts routinely seal information of this kind, even under the more demanding compelling-reasons standard. *See In re Elec. Arts*, 298 F. App'x at 569-70; *Apple*, 727 F.3d at 1225 (information that "could give the suppliers an advantage in contract negotiations"); *Philips v. Ford Motor Co.*, 2016 WL 7374214, at *6 (N.D. Cal. Dec. 20, 2016) ("[T]he need to avoid competitive disadvantage in contract negotiations . . . is a compelling reason that justifies sealing"); *DeMartini v. Microsoft*

*Corp.*, 2023 WL 4205770, at *3 (N.D. Cal. June 26, 2023) (sealing "contracts with confidential terms or discussions of those terms that would harm the party's negotiating position moving forward"). The showing here readily satisfies the good-cause standard.

**C. Category 3: AI licensing counterparties and product plans.**

Category 3 covers the identities of Plaintiffs' executed generative-AI licensees (several of which have not been publicly announced), the number and identity of prospective AI licensees with which Plaintiffs are negotiating, the kinds of products and uses those negotiations involve, and what licensing partners have reported to Plaintiffs privately. The counterparties are non-parties whose agreements require confidentiality. Dworkin Decl. ¶ 6; Walker Decl. ¶ 6. The market for licensing sound recordings for AI training and AI-enabled products is dynamic and rapidly growing. A prospective licensee that knew how many other negotiations Plaintiffs had under way, and with whom, would know Plaintiffs' alternatives to a deal with that licensee. That knowledge could shift leverage in the negotiation. *Id.* Disclosing this information would also telegraph to competing rightsholders which developers are actively seeking licenses, providing an opportunity for competitors to them first. *Id.* Finally, Plaintiffs and their counterparties decide together when to announce AI agreements and products, consistent with each counterparty's commercial rollout and the confidentiality provisions of their agreements. Disclosure would take that decision away from them and expose unreleased product plans of certain non-parties that have not made those plans public. *Id.*

Courts in this District protect exactly this information. *See, e.g.*, *FTC v. Microsoft Corp.*, 2023 WL 5186252, at *4 (N.D. Cal. Aug. 11, 2023) (sealing a non-party's "competitive business plans, future investment plans, . . . product development plans, [and] product roadmaps").

**D. Category 4: Internal market-share, financial, and analytics information, and information concerning AI-related streaming fraud.**

Category 4 covers internal analyses and executive discussion of Plaintiffs' market share on licensed services; the internal processes by which Plaintiffs' measure and track their market share; the performance of Plaintiffs' digital revenues against internal forecasts and guidance; and Plaintiffs' internal forecasts and analyses of the effect of AI-generated content on their revenues. Much of this

information comes from statements licensees provide under confidentiality obligations, and none of it is publicly reported at the level of detail reflected in the sealed material. Dworkin Decl. ¶ 7; Walker Decl. ¶ 7. A DSP that knew how Plaintiffs analyze and respond to their share on its service would possess confidential information bearing on the value of Plaintiffs' catalog to that service, and could use that information in negotiations. *Id.*

This is precisely the sort of competitive harm Courts guard against. *See In re Elec. Arts*, 298 F. App'x at 569–70; *Philips*, 2016 WL 7374214, at *6.

**E. Category 5: Streaming fraud involving AI-generated content.**

Category 5 covers testimony and interrogatory responses about streaming fraud involving AI-generated content. This information includes Plaintiffs' internal assessments of the nature and prevalence of that fraud, information DSP partners have shared with Plaintiffs in confidence, whether and how DSPs report fraud-related information to Plaintiffs, and the methodology Plaintiffs use to test content, and the third-party vendor they use for it.

The redacted material risks revealing how rightsholders and their partners detect and respond to fraud, what information flows between them, and where that information is incomplete. Dworkin Decl. ¶ 8; Walker Decl. ¶ 8. It also identifies at least one tool Sony has used to identify AI-generated recordings. Walker Decl. ¶ 8. With that information, bad actors could steer their activity toward the platforms and practices least likely to be detected, and design content to evade the identified tools. Dworkin Decl. ¶ 8; Walker Decl. ¶ 8. Disclosure would also discourage DSPs from sharing fraud-related information with Plaintiffs, impairing their ability to protect their revenues and their artists. *Id.* Apple itself has made a similar point in this proceeding, namely that public disclosure of fraud-detection methods would let "malicious actors . . . plot ways to bypass" them. Opp. at 22:13–15 (quoting Mot. at 15:25–27).

Courts in this District regularly seal information whose disclosure would help bad actors evade fraud detection. *See, e.g., Bohannon v. Facebook, Inc.*, 2014 WL 5598222, at *4 (N.D. Cal. Nov. 3, 2014) (sealing fraud-management materials because disclosure would harm the company's ability to "detect and manage fraudulent behavior"); *see also Clark v. InComm Fin. Servs., Inc.*, 2024

WL 1600631, at *3 (C.D. Cal. Mar. 13, 2024) ("Documents that may impede Plaintiff's 'ability to identify and combat future instances of fraud may be sealed.") (internal quotation marks omitted).

## III. PLAINTIFFS' REQUEST IS NARROWLY TAILORED, AND NO LESS RESTRICTIVE ALTERNATIVE WOULD SUFFICE.

As to the Opposition and the interrogatory responses (Exhibits 2 and 3), Plaintiffs seek redaction of discrete passages and short fragments of uncited responses, not sealing of entire documents. Courts in this District approve redactions where no less restrictive alternative to sealing would protect from the injury that would occur if sealing were denied. *See Cadence Design Sys., Inc. v. Suzhou Tianzhun Tech. Co.*, 840 F. Supp. 3d 817, 827 (N.D. Cal. 2026). Redaction of discrete passages is the least restrictive means of protecting the information; leaving the information unsealed, or relying on the Protective Order alone, would not prevent the harms described above. Dworkin Decl. ¶ 10; Walker Decl. ¶ 10. Consistent with Local Rule 79 and Paragraph 24 of the Protective Order, Plaintiffs attach public redacted versions of Exhibits 2 and 3. Trehan Decl. Exs. A, B.

Plaintiffs ask that the deposition excerpts (Exhibits 4 through 8) remain sealed in their entirety. Suno selected these excerpts from the depositions of Plaintiffs' senior licensing, digital, and finance executives because they address Plaintiffs' negotiations, agreements, and internal analyses, and the confidential testimony described in Section II is interspersed throughout them. Dworkin Decl. ¶¶ 4–8, 10; Walker Decl. ¶¶ 4–8, 10. The non-confidential remainder consists of cover and appearance pages, background questioning, and testimony that Suno has already quoted or summarized in the portions of the Opposition that Plaintiffs do not ask the Court to seal. Trehan Decl. ¶ 5. Public filing of line-by-line redacted transcripts would therefore add little to the public's understanding of Apple's motion, which the public can follow from the Opposition itself. Sealing the deposition excerpts in full is no broader than necessary to protect Plaintiffs' confidential information.

## CONCLUSION

Plaintiffs respectfully request that the Court grant the Administrative Motion in part, maintain under seal the portions of the Opposition identified above and in the accompanying [Proposed] Order, the unredacted versions of Exhibits 2 and 3, and Exhibits 4 through 8 in their entirety, deny it as to

the remaining highlighted portions of the Opposition, and direct that the public versions of the Opposition and of Exhibits 2 and 3 consistent with the Court's order be placed on the public docket.

Respectfully submitted,

By: ______________________

Rajan S. Trehan
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4381
Facsimile: (888) 775-0898
rtrehan@hueston.com

*Counsel for Plaintiffs*